**FILED**

**December 6, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 7:15 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **ASHLEY PATTON,** | ) | **Docket No.: 2016-05-0749** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 50575-2016** |
| | ) | |
| **GENERAL MOTORS,** | ) | **Judge Robert Durham** |
| **Employer.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on November 28, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Ashley Patton, on October 6, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Patton filed the request to determine if the employer, General Motors (GM), is obligated to pay medical expenses and temporary disability benefits for alleged work-related injuries to her upper extremities and feet occurring on June 3, 2016.

The primary issue is whether Ms. Patton sustained injuries to her upper extremities and feet on June 3, 2016, that arose primarily out of and in the course and scope of her employment with GM. The Court holds Ms. Patton did not provide sufficient evidence at this time to establish she is likely to prove at a hearing on the merits that she sustained injuries that arose primarily out of and in the course of her employment on June 3, 2016.

### History of Claim

According to her testimony at the hearing, Ms. Patton began working as a full-time employee for GM on February 22, 2016. Ms. Patton worked on the assembly line, and while the job allowed her to assemble several different automobile parts during her shift, she testified that all required extensive use of air guns to complete the assembly.

Ms. Patton averred that on Friday, June 3, 2016, she worked her entire shift

1

without taking a break. After leaving work, her right hand and arm became numb and did not improve over the weekend. Ms. Patton testified she had never experienced similar symptoms before. As a result, she sought treatment at the emergency room at Maury Regional Hospital on Sunday, June 5. (Ex. 8.) According to the records, Ms. Patton complained of intermittent numbness in her right arm as well as a right-sided headache and neck pain. The record also noted Ms. Patton stated she had suffered from these symptoms in the past and her history was positive for chronic pain and narcotic use. (Ex. 8 at 2.) Ms. Patton underwent head and neck CT scans at the emergency room, which were normal. (Ex. 8 at 4.) The hospital discharged her after administering medicine to treat a possible cervical radiculopathy. *Id.*

The following day, Ms. Patton went to work and, after notifying her supervisor of her complaints, sought treatment at GM's on-site clinic with Dr. Michelle Bruce, whom she selected from a Choice of Physician form provided by GM. (Ex. 3.) Ms. Patton testified she did not actually see Dr. Bruce that day, but was treated by her staff who gave her Biofreeze, Aleve, and wrist braces. According to the clinic's record summary, Ms. Patton complained of pain, numbness and swelling in her hands and arms that began a few weeks earlier. Ms. Patton claimed repetitively using an air gun and lifting parts caused her symptoms. She was diagnosed with "Carpal Tunnel Syndrome/Disease--Disorder (Miscellaneous)/Wrist/Bilateral." *Id.*[1]

Ms. Patton testified she continued to have problems with her hands but still could not get in to see Dr. Bruce. Therefore, on June 8,, she made an unauthorized visit to Seven Springs Orthopedics complaining of bilateral wrist pain and numbness as well as multiple aches and pains in her joints. (Ex. 7 at 3.) Ms. Patton did not provide any evidence that she spoke with anyone at GM or Dr. Bruce's office before scheduling the visit with Seven Springs. At Seven Springs, she claimed the symptoms began approximately a month earlier with constant moderate to occasionally severe pain, numbness and swelling in her hands and wrists. *Id.* The record noted Ms. Patton had suffered from "multiple orthopedic issues" over the years. Ms. Patton was diagnosed with "multiple arthralgias" and bilateral carpal tunnel syndrome.

On June 14, Ms. Patton underwent an EMG/NCS that revealed moderate bilateral carpal tunnel syndrome, right greater than left. (Ex. 7 at 8.) She returned to Seven Springs on June 22, where she treated with Patrick Stansbury, P.A.-C. (Ex. 7 at 5.) Ms. Patton stated she wished to proceed with surgery through workers' compensation, and personnel at Seven Springs advised her they would schedule surgery once workers' compensation approved.. *Id.*

Ms. Patton reported the EMG/NCS test results to GM's Human Resource

---

[1] Although the record indicates it is "1 of 15," the summary is the only record from Dr. Bruce provided by the parties.

Department, which provided her with a panel of orthopedists on June 24 from which she selected Dr. Alton Lee Hunter. (Ex. 6.) However, Ms. Patton never sought treatment with Dr. Hunter. She testified that instead, "someone" from Dr. Bruce's office informed her she could continue treating with Seven Springs; however, she did not identify the party who advised her to do so. On June 26, Dr. Bruce took Ms. Patton off work at GM due to her hand and wrist complaints, and she has not worked since that time.

On July 6, GM filed a Notice of Denial of Compensation stating there was a question as to whether Ms. Patton's employment caused her current disability. (Ex. 5.) On July 27, Ms. Patton returned to P.A. Stansbury with continued complaints of hand and wrist symptoms. (Ex. 7 at 6.) In addition, she complained of Achilles tendon tenderness in both ankles that worsened with prolonged standing and walking. P.A. Stansbury provided her with an injection and recommended physical therapy, although it is not clear whether this was for the Achilles tendon or the carpal tunnel syndrome. He did state he felt the carpal tunnel syndrome was work-related and recommended a carpal tunnel release. *Id.* at 7.

The last record from Seven Springs is a handwritten note from P.A. Stansbury dated August 15, 2016. In the note, he diagnosed Ms. Patton with right carpal tunnel syndrome. (Ex. 7 at 10.) In addition, he stated, "Please note pt's injury/condition is more than 51% due to her work. This is directly related to her job." *Id.*

At the hearing, Ms. Patton testified she underwent a carpal tunnel release on both wrists on October 27, 2016, which was paid for through her health insurance with GM. She also stated she continues to see Dr. Bruce for her condition. However, she did not provide medical records documenting this treatment. Ms. Patton testified her surgeon has not yet released her to return to work and she has not received any income or disability benefits since June 27. GM has yet to file a Wage Statement with regard to this matter.

Ms. Patton also provided records regarding past treatment from Seven Springs for her hands. The first record provided dates back to January 12, 2015. (Ex. 7 at 1.) According to the note, Ms. Patton complained of a history of painful and swollen joints in her hands and knuckles that began in 2014. She stated her pain was constant and grew worse with working, and that her symptoms made it difficult to hold or squeeze objects. *Id.*

On exam, Ms. Patton's hands were found to be essentially normal with only slight swelling in the left fourth finger. *Id.* X-rays were normal. An arthritis panel was ordered since Ms. Patton claimed a history of juvenile arthritis. *Id.* Ms. Patton returned on February 10, 2015, still complaining of bilateral hand pain; however, her examination and lab results were essentially normal. (Ex. 7 at 2.) At the hearing, Ms. Patton testified the 2015 visits were due to pain and swelling in her hands following a car accident. She

further testified she recovered completely and that was the only treatment she received for her hands prior to June 5, 2016. She had no explanation as to why the records did not mention the accident.

At the hearing, Ms. Patton contended the repetitive nature of her job with GM caused her to suffer from bilateral carpal tunnel syndrome, and she did not have these symptoms prior to her employment with GM. Thus, she is entitled to workers' compensation benefits. GM countered that Ms. Patton failed to see the authorized physicians provided to her and did not provide any opinions from a physician establishing her condition causally related to her employment with GM. Therefore, the Court should deny her claim for benefits.

### Findings of Fact and Conclusions of Law

The Court considers the following legal principles in reaching its conclusions in this matter. The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). Ms. Patton has the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Ms. Patton need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Ms. Patton has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

GM asserts Ms. Patton failed to produce sufficient evidence to show she is likely to prevail on the issue of causation regarding her alleged work-related injury. In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015).

4

Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

In this instance, the only causation opinion provided by either party was from a physician's assistant, Patrick Stansbury. As stated in *Dorsey v. Amazon.com, Inc.*, No. 2015-01-0017, 2015 TN Wrk. Comp. App. Bd. LEXIS 13, at *9, 10 (Tenn. Workers' Comp. App. Bd. May 14, 2015), only a medical doctor is qualified to provide expert medical testimony regarding causation. In *Dorsey*, the Appeals Board found a nurse practitioner's opinion that an injury was not causally related to be insufficient to provide a valid basis for the employer's denial of the claim. *Id.* Similarly, the Court finds in this matter that P.A. Stansbury's opinion regarding causation is insufficient evidence to establish Ms. Patton is likely to prevail at trial in establishing a causal relationship between her conditions and her employment with GM. Therefore, the Court holds that, without additional medical proof, Ms. Patton is not entitled to medical benefits or temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1.    Ms. Patton's request for workers' compensation benefits is denied at this time.

2.    Given that GM has not filed a wage statement in this matter as required by law, the Court recommends a referral to the Bureau of Workers' Compensation Penalty Unit for a determination as to whether the issue warrants a penalty.

3.    This matter is set for a Scheduling Hearing/Status Conference on January 18, 2017, at 2:00 p.m. C.T.

**ENTERED THIS THE 6th DAY OF DECEMBER, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

Scheduling Hearing/Status Conference:

A Scheduling Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Hearing.

Please Note:    You must call in on the scheduled date/time to participate.

**Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. First Report of Injury
2. Affidavit of Ashley Patton
3. Choice of Physician Form dated June 6, 2016
4. Choice of Physician Form dated June 24, 2016
5. Notice of Denial of Compensation
6. Medical Summary from GM Clinic
7. Medical records from Seven Springs Orthopedics
8. Medical records from Maury Regional Medical Center

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Expedited Hearing
5. GM's Response to Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 6th day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Ashley Patton | X | | X | 1001 Timber Trail, Columbia, TN 38401 Apatton0183@gmail.com |
| Jason A. Lee | | | X | jlee@burrowlee.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov